MOROCCANOIL, INC., Plaintiff,

v.

MARC ANTHONY COSMETICS, INC., Defendant.

Case No. CV 13–2747 DMG (AGRx).

United States District Court, C.D. California.

Signed Sept. 16, 2014.

Amy Elizabeth Burke, Mark D. Kremer, Gal Gressel, Zachary T. Page, Conkle Kremer and Engel PLC, Santa Monica, CA, for Plaintiff.

Gary Alan Hecker, Joseph Chase Covello, Jubine David Bagher–Sadighi, James M. Slominski, Hecker Law Group, Los Angeles, CA, Frank M. Weyer, Techcoastlaw, Hollywood, CA, for Defendant.

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION OF ISSUES [DOC. ## 211, 215, 219, 224, 227, 229, 233.]**

DOLLY M. GEE, District Judge.

This matter is before the Court on the parties' motions for summary judgment or summary adjudication of issues. [Doc. ## 211, 215, 219, 224, 227, 229, 233.] The Court held a hearing on the motions on September 12, 2014. The Court has duly considered the arguments and evidence presented in support of and in opposition to the motions. For the reasons discussed below, Marc Anthony's motions for summary judgment are **DENIED**. The Court **GRANTS** Moroccanoil's motions for summary adjudication of affirmative defense nos. two, four, and five, and **DENIES** the motion as to affirmative defense no. three.

## I.

### PROCEDURAL BACKGROUND

On April 19, 2013, Plaintiff Moroccanoil, Inc. filed a complaint against Defendant Marc Anthony Cosmetics, Inc., asserting claims for: (1) federal trademark infringement pursuant to 15 U.S.C. § 1114; (2) federal trademark infringement and unfair competition in violation of 15 U.S.C. § 1125(a); (3) common law trademark infringement and unfair competition; and (4) statutory unfair competition and false advertising under Bus. & Prof.Code §§ 17200 and 17500. [Doc. # 1.] On March 28, 2014, Marc Anthony filed a Motion for Judgment on the Pleadings. [Doc. # 60.] The Court denied the Motion. [Doc. # 172.]

On June 4, 2014, Marc Anthony filed three motions for summary judgment. [Doc. ## 211, 215, 219.] That same day, Moroccanoil filed four motions for summary adjudication of affirmative defense nos. two, three, four, and five. [Doc. ## 224, 227, 229, 233.] On August 22, 2014, both parties' filed oppositions. [Doc. ## 255, 260.] On August 29, 2014, each party filed a reply. [Doc. ## 264, 267.]

## II.

## FACTUAL BACKGROUND [1]

### A. Moroccanoil's Objections to Marc Anthony's Evidence of Previous Third Party Settlement

■ Marc Anthony offers evidence that Moroccanoil entered into a previous third party settlement. Moroccanoil correctly objects that this evidence is inadmissible under Federal Rule of Evidence 408 "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." *See Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213 (9th Cir.1990) ("Rule 408 does apply to situations where the party seeking to introduce evidence of a compromise was not involved in the original compromise."); *see also Playboy Enterprises, Inc. v. Chuckleberry Pub., Inc.*, 687 F.2d 563, 568–69 (2d Cir.1982) (affirming district court's refusal to consider evidence under Fed.R.Evid. 408 that one party consented to third-parties continued use of similar product and "conceded in a settlement agreement in another lawsuit" that products were not confusingly similar, as evidence "undermining plaintiff's claim that source confusion exists" in present case); *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, Case No. 07–03752, 2008 WL 4614660, *6 (N.D.Cal. Oct. 16, 2008) (sustaining objections to evidence of settlements between plaintiff and third-party in trademark suit).

In its Reply, Marc Anthony argues that there is nothing in Rule 408 that bars evidence of the presence of third parties in the marketplace and that this evidence is probative as to the strength and weakness of Moroccanoil's asserted mark. (Marc Anthony Reply at 16–17.) A similar argument was rejected by the Northern District of California in *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 2008 WL 4614660, *6.

Tellingly, Marc Anthony's motions for summary judgment on the trademark and trade dress claims do not even address the "strength" of the mark factor—the first factor in the Ninth Circuit's eight-factor analysis for trademark infringement. *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608–09 (9th Cir.2005). Instead its motions address only two of the eight factors: similarities in the marks and marketing channels used. Marc Anthony's third motion, which argues that the trademark Moroccanoil should be found invalid on the basis that the term "Moroccanoil" has become generic, does not make any arguments supported by evidence of the third party settlement. (*See* MSJ Re Invalidity of U.S. Trademark Registration [Doc. # 275].)

In any event, the settlement agreement is not the most probative evidence of the abundance of similar products on the market. Moroccanoil's objection is sustained.

### B. Marc Anthony's Objections to Dr. Ingrid Martin's Customer Surveys and Moroccanoil's Objections to the Expert Report of Joel H. Steckel, Ph.D.

Marc Anthony objects to the methodology used in conducting Dr. Ingrid Martin's customer surveys. (Pl's Exhs. ## 236, 237 [Doc. ## 260–11, 260–13].) "In trademark cases, surveys are to be admitted as long as they are conducted according to

---

1. As it must on this motion for summary judgment, the Court sets forth the material facts and views all reasonable inferences to be drawn from them in the light most favorable to the non-moving party. The facts presented are materially undisputed, unless otherwise indicated. In addition, both sides make numerous evidentiary objections. The Court addresses the objections only where it relies on the evidence as to which objections have been interposed.

accepted principles and are relevant." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir.1997). "Challenges to survey methodology go to the weight given the survey, not its admissibility." *Id.*

Marc Anthony asserts that the surveys are inadmissible because: (1) Dr. Martin only used photographs that do not accurately reflect, the relative colors and sizes of the parties' products (*compare* Exh. # 237 at pg. 6 [Doc. # 260–13], *with* [Doc. ## 212–15, 212–21, 212–30] ); (2) Dr. Martin did not present samples of products from the full universe of products containing argan oil—*i.e.*, third parties' products; and (3) Dr. Martin did not present any images of the products as they actually appear in the marketplace. (Marc Anthony's Objections to Plaintiff's Evidence Submitted in Opposition [Doc. # 266].) In addition, Marc Anthony objects that Dr. Martin did not eliminate possible guesses, failed to account for "noise" levels in her survey report, has never performed a trademark survey before, and has never used this methodology before. (Marc Anthony's Supplemental Objections [Doc. # 271].)

In *THOIP v. Walt Disney Co.*, 690 F.Supp.2d 218 (S.D.N.Y.2010), upon which Marc Anthony primarily relies, the party objecting to the customer survey submitted expert testimony and academic literature discussing its flaws. *Id.* at 235–241. Marc Anthony's only such evidence here is in the Expert Report of Joel H. Steckel, Ph.D., dated August 19, 2014, and submitted as Exhibit 352 to Marc Anthony's Reply. [Doc. # 264–4.]

■ Moroccanoil objects to the Steckel Report on the grounds that it was submitted for the first time in Marc Anthony's Reply (Moroccanoil Objection [Doc. 283] ) and is unsworn. The Court **SUSTAINS** the objection on both grounds.[2] *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir.1996) ("Where new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-]movant an opportunity to respond."); *Shuffle Master, Inc. v. MP Games LLC*, 553 F.Supp.2d 1202, 1210 (D.Nev.2008) ("[It] is well established, that an unsworn expert report is inadmissible") (collecting cases); *see also Ridgel v. United States*, SACV 12–0071 JGB MLG, 2013 WL 2237884 (C.D.Cal. May 21, 2013) ("Courts in the Ninth Circuit 'have routinely held that unsworn expert reports are inadmissible.' ") (collecting cases).

## C. *Moroccanoil*

Moroccanoil has three federally registered trademarks.[3] Moroccanoil's trade-

---

**2.** Even if Marc Anthony's objections to Dr. Martin's surveys were sustained, however, it would not change the outcome of Marc Anthony's motions for summary judgment. Moroccanoil cites Dr. Martin's surveys as evidence of actual confusion, but evidence of actual confusion is not needed for a court to find a likelihood of confusion. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1060 (9th Cir.1999) ("The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy.").

**3.** Moroccanoil registered the word "Moroccanoil" with the United States Patent and Trademark Office ("USPTO"). (Page Decl. ¶ 5, Exh. 173 (Registration No. 3,478,807) [Doc. # 260–2].) Moroccanoil also has registered a "vertical design mark" featuring the "Moroccanoil" word mark vertically in white, with a large, horizontal Orange "M", and a turquoise blue background. (Page Decl. ¶ 6, Exh. 174 (Registration No. 3,684,910) [Doc. # 227–1].) Finally, Moroccanoil holds a registered "horizontal design mark" featuring the "Moroccanoil" word horizontally in white, a large orange M, and a blue turquoise

mark registrations claim the orange "M" and the colors orange, white, and blue as source-indicative properties. (Moroccanoil's Reply to Marc Anthony's Statement of Issues in Opposition to Moroccanoil's Motions for Summary Judgment ("Moroccanoil's Reply Statement—Fair Use") ¶¶ 3–5 [Doc. # 267–1].) In addition, the word mark "Moroccanoil" was registered on August 5, 2008 with the PTO, for use with "hair conditioners, namely curl creams, hydrating styling creams, intense moisturizing masques [sic], and styling and finishing oils." (Moroccanoil's Reply Statement—Genericness ¶ 2.)

In January of 2007, Moroccanoil was selling only one product, an oil treatment called the "Moroccanoil Oil Treatment." (Moroccanoil's Opposition to Marc Anthony's Facts in Support of its Trade Dress Motion ¶ 5 [Doc. # 260–1].) Since then, Moroccanoil has expanded to produce a variety of hair care products containing argan oil, which include shampoo, conditioner, mousse, hairspray, and oil treatment. (Page Decl. ¶¶ 14, 41, Exhs. 26, 171, 235 [Docs. ## 260–2, 260–10].)

Moroccanoil sells its products primarily in bottles and containers containing a large orange "M" and the word "MOROCCANOIL" in the same font, in white, almost always appearing vertically down the side of the product label.

background. (Page Decl. ¶ 7, Exh. 175 (Registration No. 3,684, 909) [Doc. # 227–1].)

(Deposition of Haim Lampert at 417:22–418:9; Exh. 26 [Doc. # 260–2].)

### D. *Marc Anthony's "Oil of Morocco"*

Marc Anthony first began selling hair care products in the United States in 2002. (Declaration of Marc Anthony Venere ¶ 7 [Doc. # 212–3].) Marc Anthony first used the term "Oil of Morocco" on a product in its "Strictly Curls" line in 2011. (Moroccanoil Reply Statement ¶ 10.) Sometime in 2012, Marc Anthony decided to make a "standalone" line of products it has re-ferred to as "Oil of Morocco." (Moroccanoil Reply Statement ¶ 12; Pl's Exh. 63 [Doc. # 277]; Declaration of Marc Anthony Venere ¶ 11 [Doc. # 212–3].)

As featured below, Marc Anthony's "Oil of Morocco" products feature a turquoise blue color, in addition to yellow, white, and black. (Moroccanoil Reply Statement ¶ 14.) The "Oil of Morocco" products include a shampoo, conditioner, mousse, hairspray, and oil treatment, and all contain argan oil. (Page Decl. ¶ 17, Exh. 180 [Doc. # 260–2].)

(Declaration of James M. Slominski ¶ 6, Exhs. 4–12 (more photographs of Marc Anthony's hair care products) [Doc. ## 216–1, 216–5 to 216–13].)

### III.

### STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir.2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir.2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir.2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "[T]he inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[A]n opposing party may not rely merely on allegations or denials in its own pleading." Fed.R.Civ.P. 56(e). "It is well settled that a non-moving party must present "more than a 'mere ... scintilla of evidence' to defeat a motion for summary judgment."" *United States v. $11,500.00 in U.S. Currency*, 710 F.3d 1006, 1019–20 (9th Cir.2013) (*quoting Int'l Church of Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1068 (9th Cir.2011) (alteration in original) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986))).

## IV.

### DISCUSSION

Marc Anthony filed three motions for summary judgment on the following grounds: (1) it has not infringed Moroccanoil's trademark [Doc. # 211]; (2) it has not infringed Moroccanoil's trade dress [Doc. # 215]; and (3) the registered trademark of "Moroccanoil" has become invalid due to genericness [Doc. # 219]. The Court addresses Marc Anthony's third motion first, because the question of whether the trademark for "Moroccanoil" is invalid is relevant to its first motion for trademark infringement.

Moroccanoil filed four motions for summary adjudication of Marc Anthony's second, third, fourth, and fifth affirmative defenses. [Doc. ## 224, 227, 229, 233.] Marc Anthony does not oppose Moroccanoil's motion as to the second affirmative defense for laches (Marc Anthony's Opp'n at 1 [Doc. # 278] ), and thus summary adjudication is **GRANTED** with regard to that affirmative defense. The Court considers Moroccanoil's three remaining motions below.

### A. *Marc Anthony's Motion Re: Invalidity of Moroccanoil's Trademark*

#### 1. *Legal Standard*

Under 15 U.S.C. § 1064(3), if at any time a registered mark becomes the generic name for the goods, the trademark is subject to cancellation. A registered mark is presumed valid, however, and thus "the burden of proving that the mark is generic rests upon the defendant." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir.2005) (citing *Filipino Yellow Pages, Inc. v. Asian Journal Publications*, 198 F.3d 1143, 1146 (9th Cir.1999)). "This includes the specific presumption that the trademark is not generic." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir.2005). "The defendant. may ... overcome the presumption by a showing by a preponderance of the evidence that the term was or has become generic." *Yellow Cab Co. of Sacramento*, 419 F.3d at 928 (internal quotation marks and citations omitted).

"[T]he burden on the defendant necessary to overcome that presumption at summary judgment is heavy." *Zobmondo Entm't, LLC v. Falls Media, LLC,* 602 F.3d 1108, 1115 (9th Cir.2010).

"Generic marks give the general name of the product; they embrace an entire class of products." *Yellow Cab Co. of Sacramento,* 419 F.3d at 927 (quoting *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1047 n. 8 (9th Cir.1998)). Generic marks are not capable of protection "under any circumstances" because they identify the product, rather than the product's source. *Surgicenters of Am. v. Medical Dental Surgeries, Co.,* 601 F.2d 1011, 1014 (9th Cir.1979). A term is not generic if the "significance of the term in the minds of the consuming public is not the product but the producer." *Anti–Monopoly, Inc. v. Gen. Mills Fun Grp.,* 611 F.2d 296, 302 (9th Cir.1979). In other words, "generic terms refer to 'the genus of which the particular product or service is a species.' " *Advertise.com, Inc. v. AOL Adver., Inc.,* 616 F.3d 974, 977 (9th Cir.2010).

To determine whether a mark is generic, the Ninth Circuit applies the "who-are-you/what-are-you" test. *Filipino Yellow Pages,* 198 F.3d at 1147. Under this test, "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the [generic] name of the product answers the question 'What are you.' " *Id.* (quoting *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1391 (9th Cir.1993)). "Whether a mark is generic is a question of fact." *Yellow Cab Co. of Sacramento,* 419 F.3d at 929 (quoting *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.,* 240 F.3d 832, 840 (9th Cir.2001)).

Federal courts look to a variety of sources of evidence to determine whether a term is generic. Courts look to dictionaries; use of the term in the media; use of the term in the relevant industry, as evidenced by trade publications, trade organizations, and use by competitors; use by the plaintiff; and customer surveys. *Rudolph Int'l, Inc. v. Realys, Inc.,* 482 F.3d 1195, 1198 (9th Cir.2007) (use of the term in the industry); *Filipino Yellow Pages, Inc.,* 198 F.3d at 1148 (the Ninth Circuit places "significant but not controlling weight on the dictionary definitions"); *id.* at 1151 (use of term in the popular media); *Classic Foods Intl. Corp. v. Kettle Foods, Inc.,* 468 F.Supp.2d 1181, 1190 (C.D.Cal.2007) (usage of the term by competitors in the industry and media to determine consumers' view); THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 12:13 (4th ed. 2006) ("2 MCCARTHY") (stating that courts look to a plaintiff's own use, dictionary definitions, use by competitors, media usage, trade usage, and customer surveys).

### 2. Marc Anthony Has Not Waived its Cancellation Argument

Moroccanoil first argues that Marc Anthony's argument is waived because it never asserted that the term "Moroccanoil" was generic, and thus subject to cancellation, as a defense. (Moroccanoil Opp'n at 4–5 [Doc. # 279].) In Marc Anthony's Answer [Doc. # 9], it explicitly raises as a defense that Plaintiff's trademark registrations are invalid and unenforceable. *Id.* ¶ 46. Moreover, Moroccanoil admits in its Opposition brief that in an interrogatory, Marc Anthony specifically stated that its basis for this defense was "genericness." (Moroccanoil Opp'n at 5.) Therefore, the Court rejects Moroccanoil's argument that Marc Anthony's genericness argument is waived.

### 3. *Marc Anthony Has Not Demonstrated That "Moroccanoil" Has Become Generic*

Marc Anthony argues that the term "Moroccanoil" has become generic for "Moroccan Argan Oil" and thus generic for at least "a portion" of the goods listed in Moroccanoil's trademark registration, which includes "hair conditioners, namely ... styling and finishing oils." (Marc Anthony's Third MSJ at 1, 12.) Although it is not altogether clear, Marc Anthony appears to be arguing that "Moroccan oil" is understood by the public to mean argan oil, and thus the term "Moroccanoil" has become generic for hair conditioners that include argan oil.

Marc Anthony presents evidence that reference to "argan oil" in the media and on the Internet are tied to Morocco and that sometimes argan oil is called "Moroccan Oil." (Weyer Decl. ¶ 2, Exh. 3–4, 11–18) [Doc. ## 222–1, 222–2.] It asserts that Moroccanoil's predecessor company, Praxis, called its product "Moroccan oil" and "Moroccan hair oil" and stated it was derived from the argan nut from Morocco. (*Id.* at Exh. 21.)[4] Marc Anthony proffers evidence that "Moroccanoil" describes its product as containing argan oil from Morocco and that the brand "Moroccanoil" used to be spelled "Moroccan Oil"—with two words. (*Id.* at Exh. 25.) Marc Anthony also submits evidence that Plaintiff describes "Moroccanoil" as a "unique, ultra-light, non-greasy formula" that "infuses pure argan oil along with high-performance ingredients." (*Id.* at Exh. 2 pg. 20.) "It describes Moroccanoil Pure Argan Oil as 100% pure argan oil...." (*Id.* at Exh. 28.)

Finally, Marc Anthony submits evidence that customers on Moroccanoil's Facebook page use the terms "Moroccanoil" and "Moroccan Oil" interchangeably to refer to both argan oil and Moroccanoil's product, but this evidence is not properly authenticated. (Marc Anthony's Third MSJ at 11–12; Weyer Decl. ¶ 2, Exh. 6–9 [Doc. # 222–1].)[5] Even if Marc Anthony could cure the authentication problem[6] and the Court were to consider the Facebook evidence, none of these comments actually use the term "Moroccanoil" to refer generically to the category of goods at issue here—hair conditioners with argan oil. Only one of the comments from the Facebook page uses the term "Moroccan oil" generically, however, and it is used generically for argan oil. (*Id.* at Exh. 6 ("Is

---

**4.** Moroccanoil asserts that this product depicted in Exhibit 21 was not sold by Praxis in North America, but it provides no evidence of this. (*See* Moroccanoil's Opposition ¶ 19, [Doc. 260–1].) The exhibit provides a phone number for "Moroccan Oil USA." (Def's Exh. 21.)

**5.** Moroccanoil objects to the Facebook comments as hearsay and unauthenticated. The statements are not offered for the truth of the matter asserted, but rather to convey how Moroccanoil customers use the term "Moroccanoil." The hearsay objection is thus overruled. *See* Fed.R.Evid. 801(c)(2). But the Court agrees that the screen shots from Facebook are not properly authenticated. Courts in this district have repeatedly so held. *See, e.g., Internet Specialties W., Inc. v. ISPWest,*

CV 05–3296 FMC AJWX, 2006 WL 4568796 (C.D.Cal. Sept. 19, 2006) ("Defendant's argument, that they could be 'authenticated' by the person who went to the website and printed out the home page, is unavailing. It is now well recognized that "Anyone can put anything on the internet." No website is monitored for accuracy....") (citing *Wady v. Provident Life and Accident Ins. Co. of America,* 216 F.Supp.2d 1060, 1064 (C.D.Cal. 2002)). Moroccanoil's authentication objection is sustained.

**6.** *See Fraser v. Goodale,* 342 F.3d 1032, 1036–37 (9th Cir.2003) (citing *Block v. City of Los Angeles,* 253 F.3d 410, 418–19 (9th Cir.2001)) (courts at summary judgment focus on admissibility of *contents* of evidence, not *form* of evidence).

there 100% Moroccan Oil" in the products?).

None of this evidence creates a triable issue of fact, let alone permits judgment in favor of Marc Anthony. At most, this evidence suggests that there are some uses of "Moroccanoil" or "Moroccan Oil" to refer generically to argan oil. But Moroccanoil's trademark registration is for "hair conditioners" that include hair oils. Marc Anthony has not presented any evidence that the consuming public uses the term "Moroccanoil" to generically refer to hair conditioners that contain argan oil. A determination that a trademarked term has become generic requires "persuasive and clear evidence that the contested term has become generic among a *majority of the buyer group.*" 2 McCarthy on Trademarks and Unfair Competition § 12:12 (4th ed.) (emphasis added). "The standard to be applied to determine whether a term is a generic name or is a mark is not whether the term has *some* significance to the public as the generic name of an article, but whether its generic meaning is its *principal significance.*" 2 McCarthy on Trademarks and Unfair Competition § 12:6 (4th ed.) (emphasis added); *see also Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.,* 198 F.3d 1143, 1147 (9th Cir.1999) ("If the primary significance of the trademark is to describe the *type of product* rather than the *producer,* the trademark is a generic." (alterations omitted; emphasis in the original)).

In contrast, Moroccanoil presents ample evidence that the term "Moroccanoil" is used to refer to the company—not to hair conditioners containing argan oil. For example, "Moroccanoil" has been extensively used in mainstream media publications such as *Vogue* and the *New York Times* to refer to the company. (Declaration of Zachary Page ¶¶ 26, 28; Pl's Exh. 211, Pl's Exh. 213). These articles were published

before, during, and after Marc Anthony introduced its line of Oil of Morocco products. (*Id.*)

Moroccanoil also provides evidence that its competitors do not use the term "Moroccan Oil" or "Moroccanoil" to describe their argan oil hair products. (Moroccanoil Reply Statement ¶ 6). For example, Unilever's Suave Moroccan Infusion product explicitly recognizes Moroccanoil as a brand, stating the product is "Clinically Proven to Moisturize as Well as Moroccanoil ®" and that it "adds shine as well as Moroccanoil ®." (Pl's Exh. 213 pg. 9.) *See Classic Foods Int'l Corp.,* 468 F.Supp.2d at 1190 ("Federal courts also view usage of the term by competitors in the industry as strong evidence of how the public perceives the term.")

Marc Anthony itself uses the terms "Moroccan Oil" and "Moroccanoil" to refer to Plaintiff's product. (Moroccanoil's Reply Statement—Genericness Motion ¶¶ 34–38, 40–42, 49–50; *see also* Pls. Exh. 53 [Doc. # 277–1].) *See California Cooler, Inc. v. Loretto Winery, Ltd.,* 774 F.2d 1451, 1455 (9th Cir.1985) (looking at defendant's own use of the supposedly generic term to determine genericness).

Accordingly, Marc Anthony has not met its burden of showing that the term "Moroccanoil" has become generic. Its motion for summary judgment on this ground is therefore **DENIED.**

**B.** **Marc Anthony's Motion Re: Non–Infringement of Moroccanoil's Trademark**

Marc Anthony next moves for summary judgment on the claim that it infringed Moroccanoil's trademark by using the phrase "Oil of Morocco" on its products.

To succeed on its claim for trademark infringement under 15 U.S.C. § 1114, Moroccanoil must demonstrate:

(1) the presence of a valid and protectable trademark; and (2) that Defendant's use of the mark "is likely to cause consumer confusion." *Aurora World, Inc. v. Ty Inc.,* 719 F.Supp.2d 1115, 1141 (C.D.Cal.2009) (citing *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.,* 448 F.3d 1118, 1124 (9th Cir.2006)). On a summary judgment motion, Marc Anthony bears the burden of demonstrating the absence of triable issues of material fact as to these elements.

### 1. Validity of the Mark

Marc Anthony challenges the validity of the mark "Moroccanoil" solely on the basis of genericness, discussed *supra,* III.A. Marc Anthony makes no other challenge to the validity of Moroccanoil's trademark. The Court's ruling that Marc Anthony has not demonstrated genericness necessarily forecloses summary judgment based upon invalidity of the mark.

### 2. Likelihood of Confusion

 The Ninth Circuit has adopted the following eight factors, known as the *"Sleekcraft* test," to guide a court's inquiry as to whether a defendant's use of a trademark is likely to confuse consumers:

> 1) the strength of the mark; 2) proximity or relatedness of the goods; 3) the similarity of the marks; 4) evidence of actual confusion; 5) the marketing channels used; 6) the degree of care customers are likely to exercise in purchasing the goods; 7) the defendant's intent in

selecting the mark; and 8) the likelihood of expansion into other markets.

*KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 408 F.3d 596, 608–09 (9th Cir.2005) (citing *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir. 1979)). These factors "are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,* 638 F.3d 1137, 1145 (9th Cir.2011). "[S]ome factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important," but the relative importance of each individual factor will be case-specific. *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1054 (9th Cir.1999).[7]

Marc Anthony's motion addresses only two of the eight *Sleekcraft* factors: similarity and marketing channels used.

#### a. Similarity

The similarity of the marks is a "critical" question in the likelihood of confusion analysis. *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir.2000). The criteria for the similarity analysis are "appearance, sound, and meaning." *Entrepreneur Media v. Smith,* 279 F.3d 1135, 1144 (9th Cir.2002). The court must consider the marks in "their entirety and as they appear in the marketplace." *GoTo. com, Inc.,* 202 F.3d at 1206. "Similarities weigh more heavily than differences." *Id.*

Marc Anthony argues that this factor weighs in its favor because "Moroccanoil"

---

**7.** The Ninth Circuit recognizes two types of trademark infringement claims: forward confusion and reverse confusion. *Surfvivor Media, Inc. v. Survivor Prods.,* 406 F.3d 625, 630 (9th Cir.2005). "Forward confusion occurs when consumers believe that goods bearing the junior mark came from, or were sponsored by, the senior mark holder." Claims for reverse confusion seek to protect the senior user from losing control over its product's

identity in "the rising tide of publicity associated with the junior mark." *Dreamwerks Prod. Group Inc. v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir.1998). Moroccanoil states that it is asserting a reverse confusion claim—that Marc Anthony's use of "Oil of Morocco" will be confused with "Moroccanoil," which was on the market before Marc Anthony's "Oil of Morocco."

and "Oil of Morocco" are dissimilar in sound, meaning, and appearance. Regarding sound, Marc Anthony claims that the terms are different because "Moroccanoil" is a single, three syllable word, whereas "Oil of Morocco" is a five syllable phrase.[8] Regarding appearance, it notes that "Oil of Morocco" always appears with the term "argan oil" and in conjunction with the prominent trademark "Marc Anthony." While "Oil of Morocco" appears horizontally on Marc Anthony's products, Moroccanoil's products feature the term "Moroccanoil" vertically, with a large orange "M" as a dominant feature. Finally, Marc Anthony asserts that "Moroccanoil" and "Oil of Morocco" are dissimilar in meaning. Moroccanoil's CEO has testified that Moroccanoil is a made up word that means nothing, while "Oil of Morocco"—particularly when viewed along with the term "argan oil" means argan oil that comes from Morocco.

On the other hand, Moroccanoil contends that "Moroccanoil" and "Oil of Morocco" are confusingly similar. It argues that the terms mean the same thing to the ordinary consumer—an oil from Morocco. It points out that testimony by its CEO is not proof of whether the marks are confusingly similar. Moroccanoil argues the terms look and sound similar enough that a reasonable jury could find a likelihood of confusion. "Moroccanoil" and "Oil of Morocco" are phonetically and visually similar. Moroccanoil also contends that the

addition of a single word on Marc Anthony's product ("argan") is not sufficient to avoid confusion, and that precedent establishes that a transposition or reorganization of elements in a mark does not create sufficient dissimilarity to merit summary judgment. *See e.g., Perfumebay.com, Inc. v. eBay, Inc.,* 506 F.3d 1165, 1174 (9th Cir.2007) (finding "Perfumebay.com" and "eBay.com" to be similar); *see also Xtreme Lashes, LLC v. Xtended Beauty, Inc.,* 576 F.3d 221, 234 (5th Cir.2009) (finding a similarity between the marks EXTEND YOUR BEAUTY and XTENDED BEAUTY); *In re Wine Soc'y of Am. Inc.,* 12 U.S.P.Q.2d 1139 (Trademark Tr. & App. Bd. Apr. 6, 1989) ("American Wine Society 1967" and "The Wine Society of America" confusingly similar). Moreover, because both sides' products attempt to convey the same message (an oil from Morocco), the dissimilarities in their respective packaging do not warrant summary judgment in favor of Marc Anthony. *See Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n,* 311 F.Supp.2d 1023, 1041 (D.Or.2004) ("Tillamook Jerky" and "Tillamook" were similar marks even though the packaging of the two products was not similar).

Finally, the use of Marc Anthony's house trademark "Marc Anthony" on its product does not prevent any potential confusion as a matter of law. *Americana Trading Inc. v. Russ Berrie & Co.,* 966

---

8. Marc Anthony also provides evidence that the "audio waveforms" for the terms "Moroccanoil" and "Oil of Morocco" are different. (Marc Anthony's Trademark Motion at 10, Exh. 20 [Doc. # 212–33].) Moroccanoil objects to this evidence, noting that the only authentication of this data is the Declaration of Frank M. Weyer, Marc Anthony's counsel, stating that he recorded it on his computer using an open source audio recording program. (Weyer Decl. ¶¶ 2–3 [Doc. # 212–2].) Marc Anthony provides *no explanation* of this data's significance, and Moroccanoil argues it

would need an expert to present specialized evidence under Federal Rule of Evidence 702, not an attorney to do so. *See Invitrogen Corp. v. Clontech Labs., Inc.,* 429 F.3d 1052, 1068 (Fed.Cir.2005) ("Unsubstantiated attorney argument regarding the meaning of technical evidence *is no substitute for competent,* substantiated expert testimony.") The Court agrees, and does not consider it. Even if it did, the evidence of similarity between "Oil of Morocco" and "Moroccanoil" is sufficient to overcome Marc Anthony's motion for summary judgment.

F.2d 1284, 1288 (9th Cir.1992) (reversing district court and determining that prominence of house trademark would negate any confusion was a jury question based on factual assumptions about consumers reactions unwarranted at summary judgment).

■ Having carefully reviewed the parties' arguments, the relevant case law, and the products themselves, the Court finds that although the overall appearance and sound of the marks "Moroccanoil" and "Oil of Morocco" are not identical, focusing on the similarities and drawing all inferences in the light most favorable to Moroccanoil, sufficient similarities exist to weigh this factor in favor of Moroccanoil.

### b. *Marketing Channels Used*

Marc Anthony argues that its products and Moroccanoil's products are sold through entirely different channels of trade. Marc Anthony's "Oil of Morocco" products are sold at mass market retailers, such as Walgreens, CVS, and Rite Aid. (James M. Slominski Decl. ¶ 12, Exh. 18 [Doc. # 216–19].) In contrast, Moroccanoil markets its products exclusively through hair salons and hotels. (Deposition of Carmen Tal at 80:8–22 [Doc. # 275].)

Moroccanoil responds that the marketing channels overlap because consumers "can find Moroccanoil products on the Internet and at diverted retail locations." (Moroccanoil Opp'n at 21.) But it admits that it does not authorize sales in retail locations other than salons and some hotels, or anywhere on the Internet except its own website. (Moroccanoil's Objections to Marc Anthony's Facts in Support of its Trade Dress Motion ¶ 7.) It provides evidence of sample complaints against retail locations selling Moroccanoil products without authorization. (Pl's Exh. 239 (against Rite Aid Corporation), 240 (against CVS Caremark Corporation), 241,

242 (against Duane Reade, G.P.) [Doc. ## 260–22, 260–23, 260–24].) In arguing overlap, Moroccanoil primarily relies upon the product page for "Oil of Morocco Oil Treatment" on Amazon.com, where under the heading "Consumers Who Viewed This Item Also Viewed," several Moroccanoil Products are listed. (Page Decl. ¶ 40, Exh. 233 & 234 [Doc. # 260–10].) It concedes that it has not authorized its product for sale on Amazon. (Moroccanoil Opp'n at 21.)

The only evidence of ongoing overlapping marketing channels (*i.e.,* those for *authorized* sales that Moroccanoil would not seek to enjoin) is on the Internet, and the Ninth Circuit has held that "it would be the rare commercial retailer that did not advertise online, and the shared use of a ubiquitous marketing channel does not shed much light on the likelihood of consumer confusion." *Network Automation,* 638 F.3d at 1151 (citing *Playboy Enterprises, Inc. v. Netscape Commc'ns Corp.,* 354 F.3d 1020, 1028 (9th Cir.2004) ("Given the broad use of the Internet today, the same could be said for countless companies. Thus, this factor merits little weight.")); *see also Entrepreneur Media, Inc. v. Smith,* 279 F.3d 1135, 1151 (9th Cir.2002) ("*Some* use of the Internet for marketing, however, does not alone and as a matter of law constitute overlapping marketing channels." (emphasis in the original)). Accordingly, this factor tilts against a likelihood of confusion.

### c. *Other Sleekcraft Factors*

Marc Anthony does not address the other six *Sleekcraft* factors. The Court addresses them because Moroccanoil opposes the motion on the grounds that these factors demonstrate a likelihood of confusion.

### i. *Strength of the "Moroccanoil" Mark*

■ "The stronger a mark—meaning the more likely it is to be remembered and

associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Network Automation, Inc.*, 638 F.3d at 1149 (citing *Brookfield Commc'ns, Inc.*, 174 F.3d at 1058). In considering the strength of a mark, the Court considers both conceptual and commercial strength. "In reverse confusion cases, the Court evaluates the conceptual strength of the senior user [here, Moroccanoil], but for commercial strength, the focus is on the relative strengths of the marks so as to gauge the ability of the junior user's marks to overcome the senior user's mark." *Boldface Licensing + Branding v. By Lee Tillett, Inc.*, 940 F.Supp.2d 1178, 1189 (C.D.Cal.2013) (citing *Visible Sys. Corp. v. Unisys Corp.*, 551 F.3d 65, 74 (1st Cir.2008)) (internal quotation marks omitted).[9]

Regarding conceptual strength, marks are "conceptually classified along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." *Brookfield*, 174 F.3d at 1058. The latter three are considered strong. *Id.* In order to be considered distinctive and thus strong, the mark must invoke some level of imagination or "any type of multistage reasoning to understand the mark's significance." *Id.* "If a consumer must use imagination or any type of multistage reasoning to understand the mark's significance, then the mark does not *describe* the product's features, but *suggests* them. Such a mark is therefore classified as 'suggestive' rather than 'descriptive.'" *Id.*

A genuine dispute of material fact exists as to whether the trademark "MOROCCANOIL" is suggestive, and thus strong, or merely descriptive. Moroccanoil argues the term is suggestive, citing Judge R. Gary Klausner's decision granting a preliminary injunction in *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F.Supp.2d 1271, 1277 (C.D.Cal.2008):

> Specifically, Plaintiff has shown that the term MOROCCANOIL does not convey an immediate idea of a line of hair care products containing argan oil. Rather, the term MOROCCANOIL suggests many possible categories of oil originating from Morocco, including petroleum, olive oil, almond oil, and rose oil. Thus, Plaintiff has shown that an inferential step of the imagination is needed to come to the conclusion that MOROCCANOIL is a hair care product containing argan oil.

*Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F.Supp.2d 1271, 1277 (C.D.Cal.2008) (citations omitted).[10]

In the alternative, Moroccanoil argues that the term is descriptive. The USPTO found "Moroccanoil" descriptive with secondary meaning because the term described an ingredient in Moroccanoil's goods. (*See* Moroccanoil Reply Statement—Genericness ¶ 5.) Thus, although this finding means there is a presumption that "MOROCCANOIL" is inherently descriptive, the USPTO's decision is not binding on this Court, and is entitled to only respectful consideration. *Lahoti v.*

---

9. Marc Anthony does not address the strength of the mark this factor in its motion, and Moroccanoil only points to evidence of its *own* advertising expenditures and marketplace recognition. It provides no evidence or argument regarding its commercial strength vis-à-vis Marc Anthony's. Accordingly, the Court does not address the "commercial strength" part of the analysis.

10. Judge Klausner's later held on summary judgment that "MOROCCANOIL trademark, United States Patent and Trademark Office Registration No. 3,478,807, is suggestive." *Moroccanoil, Inc. v. Moroccan Gold, LLC*, Case No. 08–05356, 2009 WL 2399326 (C.D.Cal. July 20, 2009).

*Vericheck,* 636 F.3d 501, 506 n. 1 (9th Cir.2011). Moreover, Marc Anthony does not address this *Sleekcraft* factor in its motion, and argues only that the mark is generic in its third motion, discussed *supra.* Viewing the facts in the light most favorable to Moroccanoil, a jury may reasonably find that the mark is "suggestive" because it requires an inferential step, as opposed to descriptive.

### ii. *Proximity or Relatedness of the Goods*

Related goods are generally more likely than unrelated goods to confuse the public about the source of the goods. *Brookfield Commc'ns, Inc.,* 174 F.3d at 1055. Both parties' products fall under the category of hair products. In addition, both feature argan oil as the key ingredient. Therefore, the products are very close in proximity and relatedness and this factor tilts in favor of a finding of confusion. *See Moroccanoil, Inc. v. Moroccan Gold, LLC,* 590 F.Supp.2d 1271, 1278 (C.D.Cal.2008) (same).

### iii. *Actual Confusion*

 As an initial matter, actual confusion is not required in finding likelihood of confusion. *Brookfield Commc'ns, Inc.,* 174 F.3d at 1060.

Survey evidence can present evidence of actual confusion. *Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1262 (9th Cir.2001). Moroccanoil points to two customer surveys conducted by Dr. Ingrid Martin. The first found that 172 out of 419 participants, or 41%, answered that the Marc Anthony's "Oil of Morocco line was made by or endorsed by Moroccanoil." (Pl's Exh. 237 pg. 15—Confusing Study 2 [Doc. # 260–13].) The second found that 171 out of 403 participants, or 42%, answered that Marc Anthony's "Oil of Morocco line was made by or endorsed by Moroccanoil." (Pl's Exh. 237 pg. 16—Confusing Study 2 [Doc. # 260–13].)

The first survey found that out of 172 respondents *who found Moroccanoil and Marc Anthony's products confusing,* 29% indicated that they held this belief due to similarities in packaging and color, and 44% responded that they held this belief due to similarities in the names of the products. (Pl's Exh. 237 pg. 32) In a second survey of 171 participants *who found Moroccanoil and Marc Anthony's products confusing,* 27% of respondents were confused due to color, and 36% were confused due to similarities in the name. (*Id.* at 395 [Doc. # 260–20].)

Given these findings, Moroccanoil argues that summary judgment is unwarranted. *See Thane Int'l, Inc. v. Trek Bicycle Corp.,* 305 F.3d 894, 902 (9th Cir. 2002) ("[I]f a party produces evidence from which a reasonable jury could surmise that an *appreciable* number of people are confused about the source of the product, then it is entitled to a trial on the likelihood of confusion—although it will not necessarily prevail at that trial.") (internal quotation marks omitted; emphasis in the original); *see also* 6 McCarthy on Trademarks and Unfair Competition § 32:188 (4th ed.) ("Generally, figures in the range of 25% to 50% have been viewed as solid support for a finding of a likelihood of confusion. The Ninth Circuit has said that survey showing a 27.7% level of confusion is alone sufficient evidence to prevent a summary judgment that there is no likelihood of confusion." (citing *Thane Int'l, Inc.,* 305 F.3d at 894)).

In addition to the evidentiary objections to these surveys' methodology discussed *supra,* Part II.B, Marc Anthony argues that these surveys are "fatally" flawed because they do not isolate the terms at issue in the trademark infringement claim from the trade dress issue. (Marc Anthony Reply at 18.) Second, Marc Anthony argues

that Moroccanoil has misrepresented its percentages. (Marc Anthony Reply at 19.) For example, it asserts that in the first survey, only 77 of all respondents (419) said that they were confused between Marc Anthony's products and Moroccanoil's *because of the name*, and thus the actual percentage confused by the name is only 18%. Similarly, only 50 out of 419 found the product lines confusing due to use of the *same color or packaging*. This is true, but without breaking down the reasons for confusion (which also included a third factor—ingredients), the studies found confusion rates of 41 and 42%. This is well within the percentage that courts in this Circuit have found sufficient to overcome summary judgment. *See Thane Int'l, Inc.*, 305 F.3d at 894. And notably, Marc Anthony provides no support for its assertion that in cases of trademark and trade dress, the confusion rates must be separated accordingly.[11] To the contrary, in its motion for summary judgment as to trademark, it asserts that the proper analysis is the "the total effect of the defendant's product and package on the eye and mind of an ordinary purchaser," quoting *First Brands Corp. v. Fred Meyer, Inc.*, 809 F.2d 1378, 1384 (9th Cir.1987). (Marc Anthony's MSJ re: Trademark at 7; *see also* page 12.)

The Court concludes, due to the survey evidence, that Moroccanoil has demonstrated a likelihood of confusion. But, as noted above at footnote 2, the Court does not find this factor dispositive in its denial of Marc Anthony's motion for summary judgment.

#### iv. *Degree of Care Exercised By Purchaser*

Likelihood of confusion is determined on the basis of a "reasonable prudent consum-

er," and consumers are less easily confused when the buyer is purchasing an expensive item and when the products being sold are marketed primarily to expert buyers. *Brookfield Commc'ns, Inc.*, 174 F.3d at 1060. Marc Anthony's products sell for less than $10. (Page Decl. ¶ 45, Exh. 242.) Moroccanoil products sell in the range from $12 to approximately $50, with most products in the $20 to $30 range. (Page Decl. ¶ 39, Pl's Exh. 232.) Courts have found that consumers exercise care when purchasing cosmetics or skin care products due to brand consciousness. *See, e.g., Glow Indus., Inc. v. Lopez*, 252 F.Supp.2d 962, 1001 (C.D.Cal.2002) (collecting cases). Yet, others have found that the "fact that [hair care products] are not expensive goods, coupled with the fact that the average purchasers are not experts, leads to the conclusion that the degree of care exercised by the purchasers will likely be low, increasing the likelihood of confusion." *Dep Corp. v. Opti–Ray, Inc.*, 768 F.Supp. 710, 716 (C.D.Cal.1991) (discussing hair care products). Marc Anthony does not address this factor, and given the relatively inexpensive nature of the products at issue and that the buyers of hair products are not clearly expert buyers, the Court determines that it tilts slightly in favor of a likelihood of confusion.

#### v. *Marc Anthony's Intent*

"This factor favors the plaintiff where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *Brookfield Commc'ns, Inc.*, 174 F.3d at 1059; *see also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1153 (9th Cir.2011) ("When the alleged

---

**11.** The only other evidence of actual confusion submitted by Moroccanoil is in the form of emails from beauty suppliers, who state that other individuals—not the email's au-

thors—found the products confusing. (Pl's Opp'n to Defendant's Motions, Exh. 231 [Doc. # 279].) Marc Anthony objects to this evidence as hearsay. The objection is sustained.

infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived.") (internal quotation marks and citation omitted). Yet, this "factor is only relevant to the extent that it bears upon the likelihood that consumers will be confused by the alleged infringer's mark (or to the extent that a court wishes to consider it as an equitable consideration)." *Brookfield*, 174 F.3d at 1059 (citing *Sleekcraft*, 599 F.2d at 348 n. 10). Therefore, the Ninth Circuit has "emphasized the minimal importance of the intent factor." *GoTo.com*, 202 F.3d at 1208 (declining to consider this factor).

Here, there is evidence that Marc Anthony himself was aware of the "Moroccanoil" trademark when his company created its "Oil of Morocco" line, giving rise to an inference that he knowingly adopted "Oil of Morocco" despite its similarity to "Moroccanoil." In an email, Marc Anthony wrote that he had a "couple of concerns about OOM," and [s]ince the trade mark is taken in the USA perhaps we should consider the following: 1. Altering the name slightly-perhaps Oil from Morocco or Argan Oil of Morocco would be safer. 2. Calling the owner of the mark.... 3. Also we should make a judgment call on the pantone blue and the Orange and decide how comfortable we are with how close these colors are with the original Moroccan Oil brand. (Page Decl. ¶ 7, Pl's Exh. 82.)

Viewing the evidence in the light most favorable to Moroccanoil, this factor tips in favor of a likelihood of confusion.

### vi. *Likelihood of Expansion of the Product Lines*

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of find-ing that the present use is infringing." *Wendt v. Host Intern., Inc.*, 125 F.3d 806, 814 (9th Cir.1997) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir.1979) (citation omitted)). Marc Anthony does not address this factor, and Moroccanoil contends it is irrelevant because the parties are already selling virtually identical goods. *See Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1060 (9th Cir.1999) ("The likelihood of expansion in product lines factor is relatively unimportant where two companies already compete to a significant extent.") Therefore, the Court considers this factor to be neutral.

### d. *The Majority of the Sleekcraft Factors Point Towards a Likelihood of Confusion*

Marc Anthony moves for summary judgment only on the basis of lack of substantial similarity and use of similar marketing channels—two of the eight *Sleekcraft* factors. For the reasons above, there is a triable issue of fact as to similarity—a "critical" factor. *GoTo.com, Inc.*, 202 F.3d at 1205. In addition, the strength of the mark, proximity of the goods, type of goods and degree of customer care, intent, and actual confusion factors all point towards a likelihood of confusion. Even if the Court did not consider the evidence consumer survey evidence (evidence of actual confusion), five of the eight *Sleekcraft* factors point towards a likelihood of confusion.

In sum, Marc Anthony has not disproven a likelihood of confusion and therefore its motion for summary judgment as to non-infringement of the "Moroccanoil" trademark is **DENIED**.

### C. *Marc Anthony's Motion Re: Non-Infringement of Moroccanoil's Trade Dress*

To succeed on a claim for infringement of an unregistered trade dress, a

party must "prove: (1) that its claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1258 (9th Cir. 2001). Marc Anthony does not contend that the Moroccanoil trade dress is functional. Therefore, the Court addresses only the other two prongs of the test: (1) evidence of distinctiveness or secondary meaning; and (2) likelihood of confusion.

### 1. *The Moroccanoil Trade Dress is Distinctive and Secondary Meaning is Not Required*

The parties dispute whether Moroccanoil must show "secondary meaning," or whether its trade dress can be inherently distinct. In *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000), the Court held that the "attribution of inherent distinctiveness to certain categories of word marks and *product packaging* derives from the fact that the very purpose of attaching a particular word to a product, or encasing it in a distinctive packaging, is most often to identify the source of the product." *Id.* at 212, 120 S.Ct. 1339 (emphasis added). The Court reasoned that "[a]lthough the words and packaging can serve subsidiary functions—a suggestive word mark (such as "Tide" for laundry detergent), for instance, may invoke positive connotations in the consumer's mind, and a garish form of packaging (such as Tide's squat, brightly decorated plastic bottles for its liquid laundry detergent) may attract an otherwise indifferent consumer's attention on a crowded store shelf—their *predominant function remains source identification.*" *Id.* at 212, 120 S.Ct. 1339 (emphasis added).

In contrast, "[t]o succeed on a trade dress infringement based on product *design,* the plaintiff must show that her design has attained secondary meaning." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir.2009) (emphasis added) (citing *Wal–Mart Stores,* 529 U.S. at 214, 120 S.Ct. 1339). This is because a design "is not inherently distinctive." *Wal–Mart Stores,* 529 U.S. at 212, 120 S.Ct. 1339. Rather, its purpose is almost "invariably" other than to identify the product. *Id.* at 213, 120 S.Ct. 1339. Despite adopting this rule, the Court in *Wal–Mart Stores* recognized that its holding would "force courts to draw difficult lines between product-design and product-packaging trade dress." *Id.* at 215, 120 S.Ct. 1339.

Here, Moroccanoil asserts a trade dress claim based on its packaging, much like Tide's detergent bottles discussed in *Wal–Mart Stores*—and not the design of its products. Moroccanoil describes its trade dress as the following elements in combination: "a distinctive turquoise color; copper orange lettering, graphics, and background design elements; copper orange and white lettering, graphics, and background design elements on a turquoise blue background; and an amber bottle packaged in a rectangular turquoise box." (Compl. ¶ 1.) None of these elements have any inherent meaning and do not describe the product. Moroccanoil's trade dress is inherently distinctive because, like a Tide bottle and colors, its function is identification. *Cf. Wal–Mart Stores, Inc.*, 529 U.S. at 212, 120 S.Ct. 1339; *see also Lisa Frank, Inc. v. Impact Int'l, Inc.*, 799 F.Supp. 980, 989 (D.Ariz. 1992) ("use of bold colors and a graduated color-fade with knock-out graphics and other artwork on the package does not serve to assist in describing the product or

the product's use"). Thus, secondary meaning is not required.[12]

## 2. *Likelihood of Confusion Between Moroccanoil's Trade Dress and Marc Anthony's "Oil of Morocco" Trade Dress is a Jury Question*

Courts in the Ninth Circuit also apply the eight *Sleekcraft* factors to trade dress claims. *See, e.g., S. California Darts Ass'n v. Zaffina*, 762 F.3d 921, 929–30 (9th Cir.2014). As in its trademark infringement motion, Marc Anthony's motion for summary judgment as to Moroccanoil's trade dress claim addresses just two of the eight *Sleekcraft* factors: (1) similarity and (2) marketing channels used. (Marc Anthony's Second MSJ re Trade Dress at 21 [Doc. # 275].) Moroccanoil asserts a trade dress infringement claim based upon the trade dress of its entire product line. (*See* Compl. ¶ 14.)[13]

### a. *Similarity*

#### i. *Consistent Overall Look*

As an initial matter, Marc Anthony argues that the trade dress claim fails because Moroccanoil's entire line of products lacks a "consistent overall look," citing *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 172 (3d Cir.2000) (requiring a consistent overall look for trade dress claims based on a line of products). As other courts in this Circuit have observed, however, the Ninth Circuit has not yet adopted the "consistent overall look" test for trade dress claims based upon a line of products. *See, e.g., Paramount Farms Int'l LLC v. Keenan Farms Inc.*, Case No. 12–01463, 2012 WL 5974169, *2 (C.D.Cal. Nov. 28, 2012); *Apple Inc. v. Samsung Electronics Co.*, 768 F.Supp.2d 1040, 1048 (N.D.Cal.2011). According to McCarthy on Trademarks:

> When the alleged trade dress consists of a certain look or style of different packaging for a number of different products, it is more difficult to prove that there is a common denominator among those packages which identifies plaintiff as the source. Plaintiff must prove that its alleged trade dress has a "consistent overall look."

1 McCarthy on Trademarks and Unfair Competition § 8:5.50 (4th ed.).

Even assuming that the Ninth Circuit were to adopt the "consistent overall look" test, the application of this test does not foreclose Moroccanoil's trade dress infringement claim. This standard "do[es] not require that the appearance of the series or line of products or packaging be identical," and a plaintiff generally is per-

---

**12.** The Court recognizes that it misconstrued the analysis of *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000), in its May 29, 2014 Order on Marc Anthony's motion for judgment on the pleadings. [Doc. # 172.] Nonetheless, that Moroccanoil need not show secondary meaning does not change the outcome of that Order, which was based upon Marc Anthony's assertion of Moroccanoil's "failure to plead a valid cause of action for trade dress infringement because none of the specific combinations of trade dress elements identified by Plaintiff in the Complaint corresponds to any actual product of Plaintiff sold in the marketplace." (Marc Anthony's Second MSJ re Trade Dress Infringement at 1.)

**13.** Marc Anthony incorrectly construes Moroccanoil's trade dress as limited to how it appears on its bottle of Moroccanoil Treatment. But Moroccanoil clearly asserts a trade dress claim based upon its entire product line in its Complaint, and is entitled to so construe its trade dress claim. (*See* Compl. ¶ 14; *see also* 1 McCarthy on Trademarks and Unfair Competition § 8:1 (4th ed.) ("[I]n a trade dress infringement case, it is the plaintiff who defines what is the 'trade dress' that allegedly has been infringed."); 1 McCarthy on Trademarks and Unfair Competition § 8:5.50 (4th ed.) (recognizing "Trade Dress in *a line of different products or packages*" (emphasis added)).

mitted to define a product line "as it sees fit." *Rose Art Industries, Inc.*, 235 F.3d at 173. The issue is whether the trade dress "conveys a single and continuing commercial expression." *Id.* at 173.

■ The Moroccanoil products all feature the same color of blue, with the word "Moroccanoil" in the same font, in white, on the left side, vertically, and a large orange M, in the same font, on the top of the product, in the center. The majority also feature a word describing the product at the bottom center (*e.g.* "clarify," "hydration," "volume" and "finish"), which appear in a consistent font. Viewing the Moroccanoil line of products in the light most favorable to Plaintiff, there is a triable issue of fact as to whether Moroccanoil's products present a "consistent overall look." Therefore, even assuming Moroccanoil must show a consistent overall look, summary judgment is not warranted.

### ii. *A Reasonable Jury Could Find the Trade Dress of the Moroccanoil Product Line and Marc Anthony's "Oil of Morocco" Hair Products Confusingly Similar*

When addressing a claim of trade dress infringement for two lines of products, Courts compare the entire lines of products. *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 825 (9th Cir.1993) (affirming district court that found when "overall appearance of the parties' speaker products and packages are considered, the 'total effect' is distinctly different, obviating any likelihood of confusion" regarding two lines of speakers); *Lisa Frank, Inc. v. Impact Int'l, Inc.*, 799 F.Supp. 980, 997 (D.Ariz.1992) (rejecting defendant's argument to look at individual differences between "novelty stationary" products, where stationary lines included various different products such as pens, stamp heads, stickers, rings, pencils, tracing shapes, and

stencils); *see also Apple Inc. v. Samsung Electronics Co.*, Case No. 11–01846, 2014 WL 4145499, *2–3 (N.D.Cal. Aug. 20, 2014) ("Generally, Apple's asserted trade dresses cover the iPhone and iPad's overall look, along with the appearance of screen icons.").

■ "Trade dress protection applies to 'a combination of any elements in which a product is presented to a buyer,' including the shape and design of a product." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1, at 8–3 (4th ed.1996)). A trade dress claim involves "the total image of a product and may include features such as size, shape, color or color combination, texture, graphics, or even particular sales techniques." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 808 n. 13 (9th Cir.2003) (internal citations and quotations omitted). As with trademarks, "[s]imilarities weigh more heavily than differences." *Id.*

Moroccanoil asserts that there are "many similarities" between its line of hair products and Marc Anthony's "Oil of Morocco" products. First, it cites to its product's tri-color scheme: turquoise, white, and "golden yellow." Marc Anthony's products also have nearly identical colors: turquoise, white, and yellow. Moroccanoil also points out that both companies' oil treatments come in clear-brown bottles, with turquoise blue prominently featured in both.

There are differences as well. The turquoise blue and gold/yellow/orange colors that appear on the products lines are different in shades, the shape of the bottles differ somewhat, the sizes differ, and the Oil of Morocco line has a large "Morocco" on the top, highlighted in yellow, whereas Moroccanoil has a large orange M near the

top. In addition, "Moroccanoil" is written vertically on the left side of the products, while "Oil of Morocco" is written horizontally across the top middle. Finally, on the "Oil of Morocco" Argan Oil Treatment box, there is a photo of two women, and on Moroccanoil's box there is no photo.

Nonetheless, the Court must weigh the similarities more than the differences. *Mattel, Inc.*, 353 F.3d at 808 n. 13; *see also Lisa Frank*, 799 F.Supp. at 996–997 (finding that "[t]he striking similarities found in the product line, packaging, colors and design cannot be explained away as mere coincidence," notwithstanding that "by considering the individual features— separate and apart from the trade dress as a whole—numerous distinctions can be made"). In addition, the Court notes that similarities across several products in a product line can "compound" confusion, because "[a] consumer, searching for the unique color combinations found on [one parties'] packaging, may likely choose the [other] product based on his or her belief that the product is simply a variation of the [first] product line." *Lisa Frank, Inc.*, 799 F.Supp. at 997 (citing *Carol Cable Co. v. Grand Auto, Inc.*, Case No. 87–1036, 1987 WL 14544 (N.D.Cal. Apr. 24, 1987)).

Viewing the similarities in "the total image, design, and appearance" between the Moroccanoil products and the "Oil of Morocco" products in the light most favorable to Plaintiff, the Court finds a genuine dispute of fact with respect to similarity. *See Clicks Billiards*, 251 F.3d 1252, 1257 (9th Cir.2001) ("[I]t is crucial that we focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." (emphasis in the original)). A reasonable jury could find that the trade dresses are confusingly similar. This factor thus tips in favor of Moroccanoil.

### b. *Marketing Channels Used*

The marketing channels analysis here is the same as that for trademark, *supra*, because the products are the same. For the same reasons, this factor weighs in favor of Marc Anthony.

### c. *Other Sleekcraft Factors*

Again, Marc Anthony does not address the other six *Sleekcraft* factors. For the following three factors, the analysis is identical to that above regarding trademark infringement: proximity of the goods, type of goods and degree of care exercised by the purchaser, and the likelihood of expansion of the product lines.

Regarding strength of the mark, the Moroccanoil trade dress consisting of orange and white fonts on a turquoise blue background and amber bottle in a turquoise blue box are without meaning— they do not describe the product—and thus the mark is strong. This factor thus weighs in favor of a likelihood of confusion.

As stated above, though not dispositive, the actual confusion factor militates against summary judgment.

Finally, regarding intent, there is evidence that Marc Anthony knew of the colors and packaging used by the Moroccanoil brand. (Page Decl. ¶ 7, Pl's Exh. 82 ("Also we should make a judgment call on the pantone blue and the Orange and decide how comfortable we are with how close these colors are with the original Moroccan Oil brand."))

In sum, the weight of the *Sleekcraft* factors lean towards a likelihood of confusion, thereby foreclosing summary judgment.

### d. *Conclusion*

The importance of the *Sleekcraft* factors varies depending on the case, but three *Sleekcraft* factors are especially pertinent in reverse confusion cases: "(1) the

strength or arbitrariness of the mark; (2) the relatedness of the parties' goods; and (3) the similarity of the marks." *Glow Indus., Inc. v. Lopez*, 252 F.Supp.2d 962, 986 (C.D.Cal.2002) (citing *Dreamwerks Prod. Group Inc. v. SKG Studio*, 142 F.3d 1127, 1130 (9th Cir.1998)). As noted above, the Moroccanoil trade dress is strong. The parties' goods are clearly related: both are hair care products featuring argan oil. Focusing on the similarities and drawing all reasonable inferences in favor of Moroccanoil, a jury could find Marc Anthony's "Oil of Morocco" trade dress confusingly similar to Moroccanoil's. Thus, the Court **DENIES** Marc Anthony's motion for summary judgment on Moroccanoil's trade dress claim.

## D. Moroccanoil's Motion for Summary Adjudication of Marc Anthony's Third Affirmative Defense of Fair Use

■ A fair use defense protects a defendant where "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark ... of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or ... their geographic origin." 15 U.S.C. § 1115(b)(4). To prevail on its affirmative defense of fair use, Marc Anthony must show that it: (1) did not use the term "Moroccanoil" or the color turquoise as a trademark;[14] (2) used the term and color only to describe its goods and services; and (3) used the term and color fairly and in good faith. 15 U.S.C. § 1115(b)(4); *see also Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1039–40 (9th Cir.2010). In addition, because "[t]he fair use defense only comes into play once the party alleging infringement has shown by a preponderance of the evidence that confusion is likely," the "degree of customer confusion remains a factor in evaluating fair use." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608–09 (9th Cir.2005). Among the relevant factors to be considered in determining fair use are the degree of likely confusion, the descriptive nature of the term for the product or service, the availability of alternate descriptive terms, and the extent of the use of the term prior to the registration of the trademark. *Id.* at 609.

**14.** Marc Anthony argues that Moroccanoil's motion for summary adjudication of the fair use defense is improper to the extent it addresses color because Moroccanoil failed to raise this issue and confer as required by Local Rule 7–3. (Marc Anthony Opp'n at 8.) Moroccanoil states that Marc Anthony has mischaracterized the meet and confer process because, during that process, Marc Anthony made clear that it intended to raise a fair use defense as to its use of the color blue. (Moroccanoil Reply at 7, n. 6.) Marc Anthony also contends that there is no trademark asserted by Moroccanoil for the color blue, and thus the fair use defense does not apply to the color blue. (Marc Anthony Opp'n at 8 n. 2.) In its Complaint, Moroccanoil asserts that it has a registered trademark for " 'M Moroccanoil Design'—with the word Moroccanoil in white horizontal lettering through the letter M in copper orange *on a turquoise blue background*, USPTO Registration No. 3,684, 909." (Compl. ¶ 5 (emphasis added).) Moroccanoil has also produced evidence of this registration. (Moroccanoil's Reply Statement—Fair Use ¶¶ 4–5.) In Moroccanoil's Opposition to Marc Anthony's Material Facts, Moroccanoil clarifies that it is only asserting a claim based on the color blue in regard to its trade dress. (*Id.* ¶ 48.) Trade dress is made up of several different elements together, and the Supreme Court has made clear that a color alone is not protectable without evidence of secondary meaning. *Wal–Mart Stores, Inc.*, 529 U.S. at 206, 120 S.Ct. 1339. Regardless, the issue here is not whether Moroccanoil can prevail on the merits, but whether Marc Anthony's fair use defense fails as a matter of law. Thus, the Court considers Moroccanoil's arguments regarding color.

The fair use defense is designed to prevent a trademark holder from appropriating a descriptive term for its exclusive use and thereby preventing others from accurately describing a characteristic of their goods. *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir.1992). Otherwise, if the "holder were allowed exclusive rights in such use, the language would be depleted in much the same way as if generic words were protectable." *Id.*

**1. *Use as a Trademark vs. Use Only to Describe the Goods***

In determining whether something is used as a trademark, the court looks for indications that it is being used to "associate it with a manufacturer." *Fortune Dynamic, Inc.*, 618 F.3d at 1040. Indication of trademark use includes efforts to "attract public attention," so the court considers the "the lettering, type style, size and visual placement and prominence of the challenged words." *Id.* "Another indication of trademark use is whether the allegedly infringing user undertook 'precautionary measures such as labeling or other devices designed to minimize the risk that the term will be understood in its trademark sense.'" *Id.* (citing Restatement (Third) of Unfair Competition § 28 cmt. c (1995)). Taking "precautionary measures" may entail the prominent display of its own trademark or placing its own trademark in close proximity with the descriptive words so as to minimize potential confusion. *See Fortune Dynamic, Inc.*, 618 F.3d at 1041–42 (examining *Cosmetically Sealed Industries, Inc. v. Chesebrough–Pond's USA Co.*, 125 F.3d 28 (2d Cir.1997), and *B & L Sales Associates v. H. Daroff & Sons, Inc.*, 421 F.2d 352 (2d Cir.1970)).

Moroccanoil asserts that Marc Anthony uses the phrase "Oil of Morocco" as a trademark rather than merely to describe its products. First, Marc Anthony inserted "TM" next to the "Oil of Morocco" mark on prior versions of is product packaging, suggesting that it viewed the phrase as a trademark. *See* 3 McCarthy on Trademarks and Unfair Competition § 19:148 (4th ed.) ("A 'Trademark' notice adjacent to a descriptive designation may serve as notice to buyers that the seller is using the word to indicate source of the product, not to describe it."); *In re Indus. Washing Mach. Corp.*, 201 U.S.P.Q. 953 (Trademark Tr. & App. Bd. Feb. 14, 1979) (same). Although Marc Anthony responds that the "TM" was removed upon advice of counsel, the fact that it was used at all is probative of Marc Anthony's original intent in using the phrase. (Venere Decl. ¶¶ 4–5 [Doc. # 257–2].)

Second, in an email, Marc Anthony Venere wrote that he had a "couple of concerns" about "OOM," stating: "Since the trade mark is taken in the USA perhaps we should consider the following: 1. Altering the name slightly—perhaps Oil from Morocco or Argan Oil of Morocco would be safer. 2. Calling the owner of the mark...." (Page Decl. ¶ 7, Pl's Exh. 82 [Doc. # 277].) This email from Marc Anthony himself raises the inference that the phrase "Oil of Morocco" was used as a trademark.

In addition, Marc Anthony's products feature the phrase "Oil of Morocco" more prominently than the trademarked "Marc Anthony." "Oil of Morocco" is closer to the center of the products than Marc Anthony and in bold print with a yellow background, whereas "Marc Anthony" is in smaller font at the very top of the bottle, and without any color background. Courts often find that a party is using a term as a trademark when it is featured more prominently than the defendant's own mark. *See, e.g., Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir.2003), *abrogated*

*on other grounds as noted in Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171 (9th Cir.2010) (term featured "more prominently and boldly" than the defendant's mark, suggesting sponsorship by trademark holder and thus use as a trademark); *Beer Nuts, Inc. v. Clover Club Foods Co.,* 711 F.2d 934, 938 (10th Cir. 1983) (no fair use defense where defendant used "Brew Nuts" along with its own brand name, but "Brew Nuts" was in a much larger font and set off by a distinctive red-brown oval); *see also Lindy Pen Co. v. Bic Pen Corp.,* 725 F.2d 1240, 1248 (9th Cir.1984) (term found to be used as a trademark even though used in conjunction with defendant's brand-name).

In addition, Marc Anthony appears to use the color turquoise blue as an identifier for its Oil of Morocco products, like a trademark. There is evidence not only that Marc Anthony's employees refer to "Oil of Morocco" as a "stand alone [sic] brand," but also that the colors chosen for the "Oil of Morocco" line of products were intended to "represent Oil of Morocco as a stand alone [sic] brand." (Pls. Exh. 63.)

In opposition, Marc Anthony contends that it uses "Oil of Morocco" to describe its product, as noted by the addition of "argan oil" after the phrase "Oil of Morocco." Further, the color turquoise blue is evocative of the Mediterranean and thus Morocco (Pl's Exh. 178 [Doc. 277–2 pg. 32] ), and therefore Marc Anthony argues that it is entitled to at least an inference that the phrase is used to describe the product and not as a trademark.

Although the weight of the evidence suggests that Marc Anthony uses "Oil of Morocco" as at trademark, drawing all reasonable inferences in favor of the non-moving party, the Court concludes that a jury could find "Oil of Morocco" describes the argan oil in the product, which the parties agree comes from Morocco, and that Marc Anthony chose the color turquoise blue to evoke the product's Mediterranean origins.

**2. Use of Term "Oil of Morocco" and Turquoise Blue Color Fairly and in Good Faith**

■ This factor considers whether the accused infringer adopted its mark with the intention to "capitalize on plaintiff's good will." *Fortune Dynamic, Inc.,* 618 F.3d at 1043 (internal quotation marks omitted).[15] In other words, courts look to "evidence of malicious intent" to determine whether the use was in good faith. *Id.* at 1043. Evidence of "subjective good faith is relevant to the inquiry, but the overall analysis focuses on whether [a defendant's] use ... was 'objectively fair.'" *Id.* at 1039 (citing *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 123, 125 S.Ct. 542, 550, 160 L.Ed.2d 440 (2004)). Evidence of "carelessness" in using another party's trademark, such as failure to investigate whether it is in use by a competitor, can render use "objective-

---

15. At oral argument, Marc Anthony made much of an unpublished, Southern District of New York case, *Toni & Guy (USA) Ltd. v. Nature's Therapy, Inc.,* Case No. 03–2420, 2006 WL 1153354 (S.D.N.Y. May 1, 2006), for the proposition that "[b]ad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two com-panies' products." *Id.* at *10 (quoting *Star Indus., Inc. v. Bacardi & Co.,* 412 F.3d 373, 388 (2d Cir.2005)). This Court follows controlling Ninth Circuit precedent rather than this unpublished case from another Circuit, but recognizes that the standards are similar. *See Fortune Dynamic, Inc.,* 618 F.3d at 1043 (requiring intention to "capitalize on plaintiff's good will.")

ly unfair." *Id.* at 1043 (citing *KP Permanent I*, 543 U.S. at 123, 125 S.Ct. 542).

Moroccanoil presents evidence that Marc Anthony, the junior user, was aware of the "Moroccanoil" trademark and even referenced and reviewed Moroccanoil products when creating its own "Oil of Morocco" product packaging and name. For example, an employee wrote an email to Marc Anthony Venere stating that at least one of the packaging ideas being considered was "way too Moroccan oil" and "frightful how much it looks like Moroccan Oil." (Pls. Exh. 76 [Doc. # 277–1].) An employee also emailed Marc Anthony a "photo of our sample bottles and Moroccan Oil for your review." (Pl's Exh. 83 [Doc. # 277–1].) An email from Marc Anthony Venere himself reads: "Also we should make a judgment call on the pantone blue and the Orange and decide how comfortable we are with how close these colors are with the original Moroccan Oil brand." (Page Decl. ¶ 7, Pl's Exh. 82.) In addition, Moroccanoil points to the availability of terms other than "Oil of Morocco," such as "argan oil," "argan extract," "berber oil," and "Marrakesh oil," (names used by other producers of argan oil hair products) (Page Decl. ¶¶ 8–9) and the fact that Marc Anthony initially considered "rich browns, golden yellows and cayenne," as evocative of the argan oil. (Exh. 178 [Doc. # 277–2].) The fact that Marc Anthony could have used other terms or colors to describe its products is evidence that Marc Anthony intended to capitalize on Moroccanoil's good will. *See Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1423 (9th Cir.1984) ("choice of the phrase 'Hi–Res Adventure' when other phrases were available could indicate an intent to trade on Sierra's good will").

In opposition, Marc Anthony claims that it used the same color turquoise ("Pantone 325C") that appeared on its "Oil of Moroc-

co" products prior to Moroccanoil's existence, on a line of products called "Straight." (Venere Decl. ¶ 6 [Doc. # 257–2].) This prior use is relevant to whether Marc Anthony adopted the color in good faith or with the intent to capitalize on Moroccanoil's use. *KP Permanent Make–Up, Inc.,* 408 F.3d at 609. As noted above, there is also evidence that Moroccanoil chose the term "Oil of Morocco" to describe the fact that the products contain argan oil from Morocco. (Venere Decl. ¶ 2.) *Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 809 (9th Cir.2003) (defining "fair use" as "where the defendant has used the plaintiff's dress to describe or identify the defendant's own product and not at all to describe or identify the plaintiff's product"). In considering "box designs," turquoise blue was identified as a color that was contained on a "Moroccan Color Pallet." (Exh. 178 [Doc. # 277–2].) Finally, Marc Anthony points to an email from Venere at the time he was designing the product packaging stating that he did not believe that Oil of Morocco products looked like Moroccanoil's, thereby suggesting that he did not intend to capitalize upon Moroccanoil's good will. (Marc Anthony Depo. at 442: 1–443:7 [Doc. # 277–1]; Exh. 178 (email) [Doc. # 277–1].)

Viewing the evidence in the light most favorable to the non-moving party, the Court concludes that a reasonable jury could find that Marc Anthony chose the term "Oil of Morocco" and the color turquoise blue without the intent to capitalize upon Moroccanoil's good will.

A jury is best suited to make the determination of whether the record supports a finding of "malicious intent" by Marc Anthony to capitalize on Moroccanoil's good will. *See Fortune Dynamic, Inc.,* 618 F.3d at 1031, 1043 (noting that summary judgment is disfavored in trademark cases and that jury is in better posi-

tion to determine "fair use" based upon "evidence of malicious intent"). For these reasons, Moroccanoil's motion for summary adjudication as to Marc Anthony's fair use defense is **DENIED**.

### E. Moroccanoil's Motion for Summary Adjudication as to Marc Anthony's Fourth Affirmative Defense of Invalidity of Trademark Due to Genericness

Moroccanoil next moves for summary judgment on Marc Anthony's fourth affirmative defense, which asserts that the term "Moroccanoil" has become generic. The Court addressed this issue above, and denied Marc Anthony's motion for summary judgment. Now, even viewing the evidence in the light most favorable to Marc Anthony, the Court finds that there is insufficient evidence in the record to overcome the presumption that the trademark is valid. As discussed *supra*, IV.A, Marc Anthony has not presented any meaningful evidence that consumers use the term "Moroccanoil" generically to refer to a class of hair products containing argan oil, and Moroccanoil's registration is for "hair conditioners" including "styling and finishing oils." (Moroccanoil's Reply Statement—Genericness ¶ 2.)

Even viewing the evidence in the light most favorable to Marc Anthony does not lead to a reasonable inference that the "principal" significance of "Moroccanoil" is a hair conditioner containing argan oil from Morocco. Accordingly, Moroccanoil's Motion for Summary Adjudication on Marc Anthony's Fourth Affirmative Defense of genericness is **GRANTED**.

### F. Moroccanoil's Motion for Summary Adjudication as to Marc Anthony's Fifth Affirmative Defense of Fraudulently Procured Trademark Registrations

Marc Anthony asserts that Moroccanoil procured its registered trademark for the term "Moroccanoil" fraudulently. (*See* Marc Anthony Opp'n at 17.)

Under 15 U.S.C. § 1119, the Court may cancel a federal registration of a trademark. One ground for cancellation is that the registration "was obtained fraudulently." 15 U.S.C. § 1064(3). To prove fraud, the party seeking cancellation must establish: "[1] a false representation regarding a material fact, [2] the registrant's knowledge or belief that the representation is false, [3] the intent to induce reliance upon the misrepresentation and [4] reasonable reliance thereon, and [5] damages proximately resulting from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir.1990).

The "burden of proving that a party fraudulently procured a trademark registration is heavy." *Id.* at 1444. To preclude summary judgment, Marc Anthony "must raise a genuine issue of material fact as to each of the elements of that defense." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir.2001). Notably, Marc Anthony "must offer clear and convincing evidence that would compel a jury to infer that [Moroccanoil] subjectively intended to deceive the PTO." *Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 778 F.Supp.2d 1052, 1061 (C.D.Cal.2011) (citing *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed.Cir.2009) (granting summary judgment on a fraud defense)).

Marc Anthony identifies ten allegedly false statements that were allegedly made by Moroccanoil's CEO, Offer Tal, in Moroccanoil's December 7, 2007 trademark application. (Marc Anthony Opp'n at 18–22.) Marc Anthony also identifies allegedly false statements by Tal in support of Moroccanoil's "Amendment to Allege Use" and "Section 8" Affidavit, both submitted to

maintain the registration. (*Id.* at 22–24.) The Court addresses each of the allegedly fraudulent statements below.

### 1. *Statements in the December 7, 2007 Registration Application*

First, Tal stated that he licensed the trademark "Moroccanoil" from a company called MPL International Trade. Moroccanoil presents undisputed evidence that this was a true statement. (*See* Pl's Exhibit 191, pg. 7 (license from MPL International) [Doc. 229–2].)

■ Second, Tal stated that he purchased the rights to "Moroccanoil" from a company called MPL International Trade. Marc Anthony presents evidence that he actually purchased the rights from a company called Masoret Mitkademit. Moroccanoil concedes this was a mistake, and explains that Tal had previously acquired the rights from MPL, which had an agreement with Masoret Mitkademit for the rights, and later Tal purchased all remaining rights from Masoret Mitkademit. Moroccanoil does not cite to any evidence to support this proposition. Regardless, Marc Anthony presents no argument as to why which company Tal purchased the rights to "Moroccanoil" from is material, let alone evidence that Tal subjectively intended to deceive the PTO. Thus, Marc Anthony has not met its burden on either of these prongs of its fraud claim.

Third, Tal's affidavit asserted to the PTO that there had been a certain amount of sales of hair conditioner products under the name "Moroccanoil" since December 2006. Marc Anthony asserts that this statement is false because "[m]any of those sales through 2007 used to support obtaining the MOI Registration were made under the name "Moroccan oil," not under the name "Moroccanoil." Tal testified in his deposition that the sales of any products labeled "Moroccan Oil," as opposed to "Moroccanoil" concluded by the first quarter of 2007 and that the evidence he presented to the PTO only included sales of products that bore the "Moroccanoil" mark. (Deposition of Ofer Tal, Exh. 191 at 289:3–290:12.) Marc Anthony presents no evidence to refute this fact, other than to cite Tal's aforementioned deposition testimony. That some of the sales in early 2007 were made under the name "Moroccan Oil" does not refute the truth of Tal's statement regarding the amount of sales.' Moreover, Marc Anthony provides no evidence that if the asserted fact is false, Tal intended to deceive the PTO. Again, Marc Anthony has not met its burden of showing fraud.

Fourth, Tal stated that products sold under the "Moroccanoil" mark included "styling and finishing oil." Marc Anthony argues this statement is false, citing deposition testimony by Carmen Tal, Offer Tal's wife. (Def's Exh. 316.) Her deposition testimony, however, does not state that Moroccanoil never sold "styling and finishing oil," but that its products were not a 100% plant product and in that sense it was not selling a pure oil. (*Id.* at 22.) [16] Marc Anthony also asserts that Moroccanoil only introduced a pure "oil" product in late 2013. Regardless, as Moroccanoil points out, the PTO examining attorney had the ingredient list for the Moroccanoil Treatment, which contained argan oil, when he approved the application for a trademark for "styling and finishing oil," and thus did not rely on a false statement. (Pl's Exh. 191 at pp. 153–154.)

16. Moroccanoil objects to this deposition testimony because it lacks authentication and lacks the errata sheet that corrects the testimony. (Moroccanoil's Objections to Marc Anthony's Evidence Offered in Opposition [Doc. # 267–2].) Because this evidence could be properly authenticated at trial, the Court overrules the objection.

Fifth, Tal's submission to the PTO identified an attached exhibit as a "magazine," which Marc Anthony says is actually a "product catalog." Marc Anthony does not meet its burden of establishing fraud because it does not provide any argument, let alone evidence of, materiality, the intent to induce reliance upon the misrepresentation and reasonable reliance thereon, or resulting damages.

Sixth, Tal stated that there was no oil called "Moroccanoil" or "Moroccan Oil." (Pls. Exh. 191 pg. 3.) Marc Anthony argues this was false because there was a product in Israel known as "Moroccan Oil" that Tal knew about because it was the basis for his "Moroccanoil" business, which he bought from the company that sold "Moroccan oil." (Exh. 312.) Read in full, Tal's declaration shows that he was not saying there was not brand with this name, but that there was no oil with that name the way there is "olive oil," "castor oil," or "coconut oil," for example. (Pl's Exh. 191 pg. 3 [Doc. # 229–2].) The Court thus finds no evidence of a material deception, let alone intent to deceive or damages.

Seventh, Tal stated that the first hit after Googling "moroccanoil" would be "moroccanoil.com" and the following results would reveal retail and other entities that sold his product. Marc Anthony asserts that this was not true, as "readily located by the Trademark Examiner when he conducted such a search." (Opp'n at 20.) Thus, by Marc Anthony's own admission, the examiner did not rely on this allegedly fraudulent statement.

Eighth, Tal stated that "Praxis" was the name under which the company MPL conducted business. Marc Anthony states this is false, but makes no argument as to why this is material, let alone evidence of intent to deceive or any of the other fraud factors.

Ninth, Marc Anthony again takes issue with Tal's statement to the PTO that it sold a product that could be described as a "styling and finishing oil." As discussed above, the ingredients to the Moroccanoil Treatment were provided to the examiner, which included argan oil, and there is no evidence that this statement is false, of reliance on a false statement, or of intent to deceive.

Tenth, Marc Anthony challenges Tal's statement in his declaration that all statements made therein were true to the best of his knowledge. As discussed above, the evidence established that only the second statement is untrue, and there is no evidence that Tal made it with intent to deceive or that it is material.

Marc Anthony generally argues that all of the allegedly false statements together show intent to deceive. (Marc Anthony's Opp'n at 22.) But of the above statements, only one appears to be clearly false, and there is no evidence of materiality or intent to deceive, let alone "clear and convincing" evidence of subjective intent to deceive. *See Spin Master, Ltd.,* 778 F.Supp.2d at 1061 (citing *Bose,* 580 F.3d at 1245.)

### 2. Statements in the Support of Moroccanoil's Amendment to Allege Use and "Section 8" Affidavit

Marc Anthony again argues that Moroccanoil committed fraud in subsequent representations to the PTO by falsely stating it sold "styling and finishing oils." For the reasons discussed *supra,* Marc Anthony has not met its burden of showing fraud.

Moroccanoil's motion for summary adjudication as to Marc Anthony's fifth affirmative defense for fraud is **GRANTED.**

### V.

### CONCLUSION

In light of the foregoing, the Court orders the following:

1. Marc Anthony's Motion for Summary Judgment as to the invalidity of Moroccanoil's trademark for "Moroccanoil" [Doc. # 219] is **DENIED**;

2. Marc Anthony's Motion for Summary Judgment as to its non-infringement of Moroccanoil's trademark for "Moroccanoil" [Doc. # 215] is **DENIED**;

3. Marc Anthony's Motion for Summary Judgment as to its non-infringement of Moroccanoil's trade dress [Doc. # 211] is **DENIED**;

4. Moroccanoil's Motion for Summary Adjudication as to Marc Anthony's second affirmative defense [Doc. # 224] is **GRANTED** due to lack of opposition;

5. Moroccanoil's Motion for Summary Adjudication as to Marc Anthony's third affirmative defense of fair use [Doc. # 227] is **DENIED**;

6. Moroccanoil's Motion for Summary Adjudication as to Marc Anthony's fourth affirmative defense of genericness [Doc. # 233] is **GRANTED**; and

7. Moroccanoil's Motion for Summary Adjudication as to Marc Anthony's fifth affirmative defense of fraud [Doc. # 229] is **GRANTED**.

**IT IS SO ORDERED.**